UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BACHAR HADDAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:12-00102 |
| | ) | Judge Sharp |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

The issue presented by Defendant Wal-Mart's pending Partial Motion to Dismiss or for Summary Judgment is whether Plaintiff can expand a national origin disparate treatment charge before the Equal Employment Opportunity Commission, to a disparate impact claim in this Court based upon a preemployment test. Under the factual circumstances of this case, the Court finds that he cannot, grants Wal-Mart's Motion, and dismisses Plaintiff's disparate impact claim.

**I.**

In the spring of 2011, Plaintiff, who claims to be a permanent resident of Syrian decent, filed an application for work at a Wal-Mart located in Crossville, Tennessee. As a part of the application process, Plaintiff took Walmart's Retail Pre-Employment Assessment test. Plaintiff was not hired.

On October 11, 2011, Plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission and the EEOC, alleging race and national origin discrimination. Plaintiff checked the "race" and "national origin" discrimination boxes on the charge, and wrote that he believed discrimination occurred "because of my name."

Included with the charge was a two-page type-written letter penned by Plaintiff. The letter

1

did not discuss or mention Wal-Mart's RPEA test, or allege or suggest that the test has a disparate impact on persons of a specific national origin or race. Further, neither the charge or the letter mentioned any employment policies of Wal-Mart.

The THRC, as is standard course, investigated Plaintiff's allegation and, in doing so, requested a statement of position from Wal-Mart, and copies of pertinent rules, policies or procedures. Wal-Mart responded that Plaintiff was not hired because his score on the RPEA test – an allegedly facially neutral hiring policy – was too low, making him "not competitive." (Docket No. 41-1 at 2).

Subsequently, the THRC sent an e-mail, requesting that Wal-Mart provide Plaintiff's score on the test, a copy of the test (if available), and a breakdown for Tier 1 and Tier 2 scores.[1] In response, Wal-Mart provided Plaintiff's test score range. It did not provide his exact score or the actual test, claiming that the request sought "highly confidential [and] proprietary information." (Docket No. 41-2 at 2).

On July 12, 2012, the THRC issued its Notice of Determination, stating "[e]xamination of the evidence indicates that there is no reasonable cause to believe that the respondent has engaged in discriminatory practice" and forwarded the same to the EEOC. The EEOC adopted the findings of the THRC and, on August 13, 2012, issued a Dismissal and Notice of Rights to Sue.

Plaintiff, then proceeding *pro se*, filed his Complaint in this Court on October 31, 2012, claiming that Wal-Mart was "in violation" of the THRA and the "equal employment opportunity and anti discrimanation [sic] laws." (Docket No. 1 at 1). Plaintiff also wrote in the form

---

[1] Based upon their answers, applicants are placed in one of two tiers. The names of those in Tier 1 are made known to management and those individuals must be interviewed before any applicants who has been placed in Tier 2. Allegedly, based on the test, Plaintiff was placed in Tier 2, and was not considered for an interview during the sixty day period his application was considered active.

Complaint, that a Wal-Mart associate told him "they will not hire you because of your name." (Id. at 2).

On June 5, 2013, Plaintiff, now represented by counsel, filed an Amended Complaint in two Counts. In Count 1, Plaintiff claims disparate treatment, alleging that he was not hired by Wal-Mart because of his "middle-eastern national origin." (Docket No. 32, Am. Comp. ¶ 19). In Count 2, Plaintiff claims disparate impact, alleging that Wal-mart's pre-employment screening test "adversely impacts" those of "middle-eastern national origin." (Id. ¶ 2). Wal-Mart moves for dismissal of Count 2 because Plaintiff allegedly did not exhaust administrative remedies with respect to a disparate impact claim.

## II.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010). "This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." Id.

The Sixth Circuit has "cautioned, however, that an EEOC charge 'filed by lay complainants should be 'liberally construed' . . . because they 'are unschooled in the technicalities of the law and proceed without counsel.'" Tisdale v. Fed. Exp. Corp., 415 F.3d 516, 527 (6th Cir. 2005) (internal citation omitted) (quoting, Haithcock v. Frank, 958 F.3d 671, 675 (6th Cir. 1992) and Ang v. Procter & Gamble Co., 932 F.2d 540, 547 (6th Cir. 1991)). As a consequence, "[a]ctions in federal court 'should not be restricted by the failure of a complainant to attach the correct legal conclusion to the EEOC claim, conform to procedural technicalities, or include the exact wording which might be

required in a judicial pleading.'" Id. (quoting, Davis v. Sodexho Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir.1998)). Instead, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination," Randolph v. Ohio Dept. of Youth Serv., 724, 732 (6th Cir. 2006) (citation omitted), and "[w]hen facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Younis, 610 F.3d at 362 (quoting Davis, 157 F.3d at 463).

### III.

In opposition to Wal-Mart's Motion, Plaintiff relies upon the Sixth Circuit decision in Weigel v. Baptist Hosp., 302 F.3d 367 (6th Cir. 2002), and the Second Circuit decision in Gomes v. AVCO Corp., 964 F.2d 1330 (2nd Cir. 1992). However, in the context of this case, Weigel is not controlling precedent, and Gomes is not persuasive authority.

In Weigel, plaintiff, a nurse at Baptist Hospital in Knoxville, resigned her position without giving the required two-week notice, and in her exit questionnaire raised several complaints, including age discrimination. Months later, she reapplied for employment, but was not hired, ostensibly because she did not give the requisite notice.

Subsequently, Plaintiff filed an EEOC charge, on which she checked the box on the form for "Age," but not the box marked "Retaliation." In deciding that the retaliation claim could proceed, the Sixth Circuit wrote:

> . . . The facts supporting Weigel's retaliation claim emerged from the nondiscriminatory explanation advanced by [Baptist] for its refusal to rehire her. Since the employer's articulation of its nondiscriminatory reasons for taking a challenged adverse employment action is an essential step in any discrimination investigation, this claim clearly seems to be within the scope of any EEOC investigation expected to grow out of Weigel's discriminatory hiring claim.

4

> Moreover, Weigel's EEOC charge included facts relating both to [Baptist's] refusal to rehire Weigel and to the allegedly discriminatory treatment she received while previously employed at [Baptist]. It seems logical that any investigation resulting from Weigel's EEOC charge would explore whether there was a relationship between her earlier complaints of discrimination and her subsequent claims of discriminatory hiring.

Weigel, 302 F.3d at 380-81.

Weigel supports Plaintiff's position insofar as the Sixth Circuit relied on the fact that the underlying basis for a later claim was found in the employer's explanation for its hiring decision. But it would be a mistake, the Court believes, to read Weigel as blanketly endorsing the proposition an that an employer's response to routine requests from the EEOC automatically provides fodder to support an additional, unclaimed charge, even in the absence of any fact or allegations that would support that new charge.

Moreover, Weigel's concern was with whether a plaintiff could pursue a retaliation claim based upon her discrimination charge, with the court noting that it had "previously suggested that under the scope of the investigation test, 'retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants.'" Id. quoting, Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 833 (6th Cir. 1999)). It does not follow, however, that a disparate impact claim would necessarily or naturally flow from a disparate treatment charge, as "'[d]isparate impact claims involve facially neutral employment practices that have disproportionate impact on protected classes of individuals'" while "'[d]isparate treatment claims . . . involve intentionally discriminatory employment practices,'" and require proof of discriminatory motive or intent. Serrano v. Cintas Corp., 699 F.3d 884, 892 (6th Cir. 2012) (citation omitted, collecting cases); compare, Smith v. Centra Benefits Serv. Inc., 177 F.3d 979 (5th Cir. 1999) (disparate impact claim based upon a problem solving test was not reasonably related to EEOC

5

charge that "simply alleged that [the employer] promoted a less experienced white employee," even though the EEOC learned about the test during the course of its investigation) with Farrell v. Butler Univ., 421 F.3d 609, 616 (7th Cir. 2005) (intentional gender discrimination charge said to encompass disparate impact claim where plaintiff wrote, "I believe that there is an inherent or deliberate bias against women faculty and, in this case, only two women from the entire faculty would have met the criteria for the award, yet many more men would have been eligible").

In Gomes, the other case on which Plaintiff principally relies, the court did allow a disparate impact clam to go forward, even though only disparate treatment in the form of failure-to-select was specifically alleged in the EEOC charge. At issue was whether an eight year experience requirement for a jig and boring operator had a discriminatory impact on employees of Portugese decent.

The Charge before the EEOC alleged that plaintiff was of Portugese descent, that he applied for the jig bore position, that an eight year rule governed the promotion to those position, that a less qualified employee was promoted to the position even though plaintiff had the requisite experience, and that plaintiff was the only Portuguese employee in his job classification. In finding that the disparate impact claim reasonably could arise from the investigation of plaintiff's disparate treatment claim, the Second Circuit wrote:

> To be sure, this complaint most naturally supports a claim of intentional discrimination. ... Nonetheless, once the EEOC investigated the case and found that [plaintiff] did not satisfy the eight year rule, it would have been perfectly natural for the EEOC to question the necessity of the eight year rule itself. [Plaintiff's] allegation that people with less experience than he (and thus less than eight years) were promoted ahead of him should have raised suspicion that there was no business justification for the rule. Given that [plaintiff] had also alleged that he was the only Portuguese in his job category, the EEOC could then have reasonably inquired as to whether this possibly unnecessary rule had a discriminatory impact on employees of Portuguese decent.

Gomes. 964 F.2d 1334.

Unlike Gomes in which the eight year rule was central to plaintiff's claim of intentional discrimination, allegations about the RPEA test are nowhere to be found in Plaintiff's charge. And, unlike Gomes where allegations were made in the charge about others being promoted perhaps in violation of the supposedly neutral rule, there is no suggestion in Plaintiff's charge that others were treated more favorable than he because of the test. Rather, the only claim is that Plaintiff was not hired because of his national origin based on his name, and the Court does not believe that such an allegation could be said to reasonably prompt an investigation into whether the unmentioned test impacted other applicants as well.

More on point is Pacheco v. Mineta, 448 F.3d 783 (5th Cir. 2006), a Fifth Circuit case relied upon by Wal-Mart. There, an air traffic controller for the Federal Aviation Administration filed suit for intentional discrimination based on race when he was passed over for a promotion. In his charge, plaintiff specifically identified his claim as being based upon his non-selection for the supervisor's job, asserting that it was given to a "good old boy," instead. In his complaint, plaintiff raised both a disparate treatment and disparate impact claim, the latter of which was dismissed for failure to exhaust remedies.

On appeal, the Fifth Circuit observed that "the scope of the exhaustion requirement has been defined in light of the two competing Title VII policies that it furthers":

> On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally. . . . On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. . . . Indeed, "[a] less exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance."

Id. at 788-89 (internal citations and footnotes omitted). The court then canvassed the law in the area of disparate impact claims arising from intentional discrimination charges, and, along the way, discussed Gomes in detail, noting that "most importantly," the plaintiff in Gomes had identified a facially neutral employment policy (the eight year rule) which the Pacheco court stated was "the cornerstone" of any EEOC investigation." Id. at 792. Ultimately, the Fifth Circuit in Pacheco held that a disparate impact investigation could not reasonably have been expect to grow out of plaintiffs charge because "(1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and, (3) it complained of past incidents of disparate treatment only." Id.

These same factors are present here. Plaintiff's charge only alleged that he was discriminated against because of his name, and he identified no policy which led to his treatment. Thus, the Court finds that his disparate treatment claim would not have reasonably prompted the EEOC to investigate an unmentioned disparate impact claim.

In arriving at this conclusion, the Court recognizes Plaintiff's argument that the "cornerstone" for a disparate impact claim in this case – the RPEA – was brought to the EEOC's attention by Wal-Mart's response to Plaintiff's charges and the EEOC's inquiry into those charges. But to allow an exception to the exhaustion requirement based upon an employer's response to a routine discovery request runs the risk of allowing the exception to swallow the rule. As one court has recently stated in response to an argument that the court should define the scope of a charge by considering the employer's defense to the charge:

> if a respondent's allegation of a neutral employment policy in administrative proceedings was sufficient to instigate an administrative investigation of a disparate impact claim, it would seem unnecessary most of the time for a plaintiff to expressly allege disparate impact since most defendants (in various ways) claim to follow neutral or nondiscriminatory policies. This would not be a practical approach to giving notice of a claim of discrimination.

8

Petty v. City of Topeka, 2013 WL 1776360 at *5 (April 25, 2013).

## IV.

For the reasons set forth above, Wal-Mart's Motion for Partial Summary Judgment or Partial Dismissal will be granted, and Plaintiff's disparate impact claim will be dismissed.[2]

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[2] In addition to dismissal, Wal-Mart requests that any allegations relating to disparate impact be stricken from the Amended Complaint, or that Plaintiff be required to submit yet another Amended Complaint omitting those allegations. There is no need for such measures, and this request is summarily denied.